**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JANET NAWROCKI and H.O.P.E., INC., d/b/a HOPE FAIR HOUSING CENTER, an Illinois Not-for-Profit Corporation; | Case No. 20-CV-1517 |
| Plaintiffs, | |
| v. | Judge Joan B. Gottschall |
| | Magistrate Judge Jeffrey Cummings |
| OAK BROOK TOWERS CONDOMINIUM ASSOCIATION, OAK BROOK TOWERS HOMEOWNERS ASSOCIATION, LIEBERMAN MANAGEMENT SERVICES, FIRSTSERVICE RESIDENTIAL ILLINOIS 2, INC., and RICHARD KRILICH; | Jury Trial Demanded |
| Defendants. | |

**PLAINTIFFS' COMBINED RESPONSE IN OPPOSITION TO DEFENDANTS'**
**MOTIONS TO DISMISS**

Plaintiffs, by their counsel, Soule, Bradtke & Lambert, submit this combined opposition to the motions to dismiss filed by Defendants in this case.[1]

**Introduction**

This is a textbook case of failure to grant a reasonable accommodation of an assigned parking space near a building entrance to a resident with a disability, in violation of §3604(f)(3)(B) of the Fair Housing Act. (Am. Cpl. ¶1, 8, 35). Defendants have moved to dismiss Plaintiffs' claims under F.R.C.P. 12(b)6) for failure to state a claim, incorrectly arguing that Plaintiffs have failed to cite the Fair Housing Act reasonable accommodation provision

---

[1] In the parties' May 15 Joint Status Report, Defendants Oak Brook Towers Homeowners Association, Lieberman Management Services, FirstService Residential Illinois 2, Inc., and Richard Krilich stated they intended to file an Answer, but, instead, filed a Motion to Dismiss on June 15, 2020 largely identical to that filed by the Condominium Association.

1

commonly known and cited by Plaintiffs at ¶35 and in their Prayer For Relief as §3604(f)(3)(B). Defendant Condominium Association also vaguely alludes to contested facts not in the record and thus not properly considered under Rule 12(b)(6) in attempt to impermissibly delegate its obligations under the Fair Housing Act to its member, Plaintiff Nawrocki. Finally, despite Defendants' unlawful conduct requiring extensive undisputed intervention by HOPE Fair Housing Center on Plaintiff Nawrocki's behalf, Defendants Homeowners' Association and the (joint) managers argue without basis that HOPE should be dismissed for lack of standing.

### Plaintiffs' Allegations

More than a year has passed since Plaintiff Nawrocki, a person with a disability within the meaning of 42 U.S.C. §§ 3602(h)(1)-(3), and member of the Oak Brook Towers Condominium Association who has substantial limitations in walking, unsuccessfully requested an assigned parking space in the complex parking lot close to the entrance she uses to access the elevator near her condominium unit door. (Am.Cpl. ¶¶8-10, 18-20). Defendants, two apparently intermingled Associations operating the complex at issue and their joint management company and manager, denied Plaintiff's reasonable accommodation request through their joint manager and counsel. (Am.Cpl. ¶¶13-17, 20-21, 23, 26-34) Even extensive advocacy on Ms. Nawrocki's behalf by Plaintiff HOPE Fair Housing Center in writing and by telephone over many months (including referring Defendants' manager to a seminal federal Joint Statement document on housing providers and reasonable accommodation) failed to cause Defendants to comply with the Fair Housing Act and grant Plaintiff Nawrocki's request. (*Id.*) Defendants variously ignored Ms. Nawrocki's request for reasonable accommodation, denied it, delayed resolution of the request in general, asked for medical documentation as a means to delay, backtracked and inexplicably claimed they did not understand her request, and suggested she was

2

required to pay money for an (unacceptable/not equivalent/not requested) accommodation. (Am. Cpl. ¶¶21-34). After reciting these facts, Plaintiffs allege at ¶35: "Based on the foregoing, Defendants are in violation of 42 U.S.C. Section 3604(f)(3)(B) of the Federal Fair Housing Act, in that they: "failed to fully engage in a meaningful interactive reasonable accommodation process; failed to provide any accessible parking in the tenant parking lot; and refused to provide Plaintiff Nawrocki with her requested reasonable accommodation." Plaintiffs also cite Section 3604(f)(3)(B) in their Prayer for Relief, §A.

Plaintiffs further allege as to injury: "Plaintiff Janet Nawrocki has suffered and continues to suffer on a continuing and ongoing basis loss of her civil rights, physical pain and anguish, emotional injury, humiliation, and embarrassment as a result of the discriminatory conduct of Defendants." (Am. Cpl. ¶36) Plaintiff Nawrocki seeks injunctive and equitable relief as well as compensatory and punitive damages, attorneys' fees and costs. (Am. Cpl., Prayer for Relief. P.11)

Concerning Plaintiff HOPE Fair Housing Center, Inc., an organizational plaintiff, the Complaint sets forth facts detailing its advocacy activities and involvement, thus demonstrating HOPE's diversion of its resources on the face of the complaint. (Am. Cpl. ¶¶22-23, 26-27, 29-30, 32-33) In addition to detailing HOPE's activities, Plaintiffs allege: "Plaintiff HOPE has been directly and substantially injured as a result of the above discriminatory and retaliatory acts of Defendants in that: A. HOPE has been frustrated in its mission to eradicate discrimination in housing and carrying out the programs and services it provides, including advocating for the rights of people with disabilities to accessible housing, educating the public about fair housing rights and requirements, educating and working with industry groups on fair housing compliance, providing assistance to individuals and families looking for housing or affected by

discriminatory housing practices, and eliminating discriminatory housing practices; and B. HOPE's limited resources have been diverted from providing these services to efforts directed to investigate, address, and counteract Defendants' discriminatory and retaliatory conduct." (Am. Cpl. ¶37) HOPE seeks injunctive and equitable relief, damages resulting from diversion of its resources and frustration of its mission, attorneys' fees and costs. (Am. Cpl. Prayer for Relief, p. 11.)

Plaintiff filed her Complaint on March 2, 2020 against the Condominium Association of which she is a member, the Management company in charge of the entire complex (and its predecessor), and Richard Krilich, the site property manager. On April 14, 2020, based on a telephone call from counsel for the Condominium Association asking that it be dismissed because the Homeowners Association allegedly handles the complex's parking,[2] Plaintiffs filed an Amended Complaint adding the Homeowners Association. (Am.Cpl.¶¶14, 31) Plaintiffs allege that both Association Defendants "may jointly have a duty to engage in a proper process and reasonably accommodate Plaintiff Nawrocki." (Am.Cpl. ¶31)

As alleged in the Amended Complaint, ¶¶1, 31-32, in an August 21, 2019 letter to Defendants, HOPE attempted to educate Defendants about the Fair Housing Act in order to gain Ms. Nawrocki's requested accommodation (Am. Cpl. ¶31-32), including by referring Defendants to a seminal Joint Statement about reasonable accommodation in housing that was issued by the United States Department of Housing and Urban Development and the Department of Justice. This document is often used in the fair housing arena for direction and education because it provides examples about what to do in common everyday situations – including the exact one at

---

[2] Plaintiffs' counsel asked whether the manager and management company were jointly hired by and acted for both Associations and was told yes. Plaintiffs' counsel requested written evidence supporting Defendants' informal telephonic request to dismiss the Condo Association, but nothing has to date been received.

issue here: the Joint Statement directs that the provider should grant the request for an assigned parking space. *Joint Statement of the Department of Housing and Urban Development and the Department of Justice, Reasonable Accommodations Under the Fair Housing Act*, https://www.justice.gov/sites/default/files/crt/legacy/2010/12/14/joint_statement_ra.pdf, p. 6, Example 1. As HOPE noted to Defendants, the Joint Statement also confirms that an extended delay in responding to a request for an accommodation, like that which occurred in this case, may be considered a denial, and includes an explanation of how § 3604(f)(3)(B) applies to condominium properties. (*Id. a*t 3, 11; Am.Cp. ¶31)

The reasonable accommodation provision in the Fair Housing Act is cited as, and is referred to as, "42 U.S.C. § 3604(f)(3)(B)" in common parlance, in the body of Fair Housing Act case law, and in the Joint Statement. *See e.g.,* Joint Statement, p. 1, note 3; *Astralis Condominium Association v. Secretary, U.S. Dept. of Housing and Urban Development,* 620 F.3d 62 (1st Cir. 2010)(upholding ALJ's determination that condominium violated §3604(f)(3)(B) by denying handicapped parking spaces to complainants); *Jankowski Lee & Associates v. Cisneros*, 91 F.3d 891 (7th Cir. 1996), as amended (August 26, 1996)(parking accommodation case where defendants had sufficient information about disability and request for accommodation under §3604(f)(3)(B)); *Shapiro v. Cadman Towers, Inc.,* 51 F.3d 328, 333-36 (2d Cir. 1995)(refusal to modify "first come/first served" parking policy to accommodate disabled tenant's need for a parking space violates § 3604(f)(3)(B)).

## Standard of Review

Federal Rules of Civil Procedure Rule 8 states, "a pleading that states a claim for relief must contain…a short and plain statement of the claim showing that the pleader is entitled to relief." "The Rule reflects a liberal notice pleading regime, which is intended to 'focus litigation

on the merits of a claim rather than on technicalities that might keep plaintiffs out of court.'" *Brooks v. Ross*, 578 F.3d 574, 580-581 (7th Cir. 2009) (*quoting Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). A plaintiff's claim must be plausible and contain "enough facts to raise a reasonable expectation that discovery will reveal evidence" that supports the allegations in the Complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the …claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

On a 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the Complaint, and draws all reasonable inferences in favor of the plaintiff. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). Rule 12(b)(6) motions are not to be used as a tool to resolve contested facts or to address the merits of the claim. *Labella Winnetka, Inc. v. Gen. Cas. Ins. Co.*, 259 F.R.D. 143, 150-51 (N.D. Ill. 2009). The Supreme Court has held that the Fair Housing Act should be construed liberally and applied broadly. *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209 (1972).

### Defendants' Motions to Dismiss

Both Defendant Associations and the managers argue that Plaintiffs have not identified which provisions of the Fair Housing Act they believe the Association violated. (Condo MTD p. 2; Homeowner MTD p. 4) Both sets of Defendants feign ignorance of the Fair Housing Act's reasonable accommodation provision, § 3604(f)(3)(B), and argue that it is not a legal requirement or basis for a claim, but a "definition." Both Defendant Associations and the managers argue that Plaintiffs failed to allege they suffered any injury within the meaning of the statute and that Plaintiffs failed to adequately allege that the Association acted to discriminate against them. (Condo MTD p. 2; Homeowner MTD p. 4) Both Defendant Associations also

argue that Plaintiffs do not allege facts sufficiently setting forth a cause of action for which relief can be granted, claiming they cannot understand Plaintiffs' 11 page complaint, and referring to the Joint Statement as an irrelevant "booklet." (Condo MTD p. 4; Homeowners MTD p. 4) The Condominium Association further attacks Plaintiff for failing to attach evidence showing that the Condominium Association has authority over the parking lot adjacent to the Condominium Building, apparently relying for this argument on the telephone call to Plaintiffs' counsel that has not so far resulted in Defendants providing any evidence on this point *See* note 2, above.[3] Defendants Oak Brook Towers Homeowners' Association and the manager Defendants also claim that Plaintiff HOPE Fair Housing Center, Inc. should be dismissed for lack of standing. (Homeowners' MTD p. 2, 4)

### Argument

Defendants' motions should be dismissed because Defendants' arguments are baseless and contrary to well settled legal principles and precedent.

A.    Plaintiffs have sufficiently complied with F.R.C.P. 12(b)(6).

Defendants' assertion that Plaintiffs have failed to state a claim because they have not identified a provision of the FHA that Plaintiffs claim has been violated, supposedly leaving them "to guess what provision of the FHA they have allegedly violated" is just "playing pretend." (Condo MTD at 3; Homeowner MTD at 4) That Defendants are making up their argument is tipped off by Defendants' failure to even mention the content of the statutory provision cited by plaintiffs, 42 U.S.C. § 3604(f)(3)(B). *See* Am. Cpl. ¶35.

---

[3] As set forth below at pp. 11-14, the Condominium Association cannot delegate to a third party or abrogate its duties under the Fair Housing Act.

Section 3604(f)(3)(B) appears in a section of the FHA that that begins with the preamble "As made applicable by Section 3603 of this Title and except as exempted by sections 3603(b) and 3607 of this title, it shall be unlawful . . .." Section 3604(f)(3)(B), like several other subsections that follow the preamble goes on to specifically identify certain types of conduct that are illegal under the section, in this case "a refusal to make reasonable accommodations in the rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). This is the specific FHA violation that Plaintiffs are asserting in the Complaint, and there is no more detailed description in the Statute of the scope of the prohibited conduct for which plaintiffs seek redress. Plain and simple, § 3604(f)(3)(B) is the Fair Housing Act's reasonable accommodation provision. Apparently, decades after the section's addition to the FHA in 1988, and the thousands of cases and regulatory guidance applying it, the Defendants in this case are here to pronounce it badly worded and insufficient to state a claim.

Unlike Defendants, courts have not had the slightest difficulty apprehending the viability, scope and meaning of a plaintiff asserting a claim under 42 U.S.C. § 3604(f)(3)(b). *See e.g. Chavez v. Aber*, 122 F.Supp.3d 581, 599 (W.D. Tex. 2015)("Plaintiffs have asserted a sufficiently plausible claim for housing discrimination under 42 U.S.C. § 3604(f)(3)(B) to survive Defendants' Rule 12(b)(6) challenge"); *Lapid-Laurel, L.L.C. v. Zoning Board of Adjustment of the Township of Scotch Plains*; 284 F.3d 442, 459 (3d Cir.2002)("As noted above, we have not previously addressed the 'necessity' and 'equal opportunity' factors of a Section 3604(f)(3)(B) claim"); *Donovan v. Woodbridge Maintenance Ass'n*, 2015 WL 1241020 at *4 (E.D. Cal. March 17,

2015)("The Court accordingly denies Defendants' motion for judgment on the pleadings as to Plaintiff's section 3604(f)(3)(B) claim"). Defendants' assertions should be rejected.[4]

Plaintiff Nawrocki has also sufficiently alleged injury under the Fair Housing Act, caused by Defendants' conduct. The facts set forth in the complaint show the incredible amount of frustrating and humiliating delay, denial and willful ignorance on the part of Defendants towards Ms. Nawrocki. (Am. Cpl. ¶¶20-34) Plaintiffs allege that Ms. Nawrocki has been forced to park at the back of the parking lot when she gets home from work, and must then painfully struggle to make it into the building and her condominium. (Am. Cpl. ¶20) As of the writing of this response, Ms. Nawrocki has been denied her requested accommodation for over 13 months. (Am. Cpl. ¶34) Plaintiffs allege, and it is logical and reasonable to comprehend, that Ms. Nawrocki has suffered and continues to suffer physical and emotional pain and damages. (Am. Cpl. ¶36)

B.    Plaintiffs have complied with F.R.C.P. 8(a)(2).

Just as Defendants claim the Fair Housing Act is somehow incomprehensible, they also assert that the Complaint should be dismissed because it violates Fed.R.Civ.P. Rule 8(a)(2) and alleges *too many facts* for Defendants' taste. In support of this argument, Defendants cite the substantially curtailed decision in *Conley v. Gibson*, 355 U.S. 41 (1957) and utter a few generalities (without any reference to paragraphs of the Complaint) about lengthy examples and long narratives. In fact, the Complaint consists of only 11 pages, containing 37 concise paragraphs that are used to: introduce and describe the nature of the action (¶¶1-4); identify the basis of jurisdiction

---

[4] We briefly note that the entire premise of Defendants' argument is doubly misplaced: as noted in *Eller v. Liberty County, Ga.*, 2010 WL 2402770 at *1 (S.D. Ga. June 14, 2010), "It is well-established, however, that a plaintiff need not plead the precise statute or law underlying his claims. *See e.g., United Food and Commercial Workers Int'l Union*, 866 F.1380, 1384 (11th Cir. 1989) . . .. Plaintiffs have sufficiently detailed their theory of recovery here. At most, very specific, easily identifiable portions of the federal and state constitutions are implicated."

and venue (¶¶5-6); identify the parties (¶¶7-17); set forth the facts related to the allegedly extensive unlawful conduct (¶¶18-35); allege the damages sustained by Plaintiffs (¶¶36-37); demand a jury trial ( ¶38); and state a Prayer for Relief (p. 11).

This is far from complaints targeted by Rule 8 for "unnecessary length, coupled with repetitiveness, needless complexity and immaterial allegations" . . . that make a "complaint unintelligible by scattering and concealing in a morass of irrelevancies the few allegations that matter." *Hardy v. Illinois Dept. of Corrections*, 2015 WL 4573302 at *1 (N.D. Ill. July 29, 2015) (dismissing prisoner complaint containing over 250 paragraphs spread over 180 pages). Here, Plaintiffs have merely complied with the pleading standards in the post-*Twombly/Ashcroft* world, which mandate that a plaintiff plead "enough details about the subject matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010). No grounds for dismissal exist.

C.     HOPE Fair Housing Center Has Sufficiently Alleged Standing and Injury

An organizational plaintiff can establish standing and can recover damages based upon the diversion of its resources in order to address a defendant's discriminatory conduct. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *Common Cause Indiana v. Lawson*, 937 F.3d 944, 950 (7th Cir. 2019); *Crawford v. Marion County Election Board*, 472 F.3d 949, 951 (7th Cir. 2007), *aff'd on other grounds*, 553 U.S. 181 (2008); *United States v. Balistrieri*, 981 F.2d 916, 933 (7th Cir. 1982); *Bellwood v. Dwivedi*, 895 F.2d 1521, 1526 (7th Cir. 1990); *HOPE, Inc. v. Alden Gardens of Bloomingdale*, 2017 WL 4339823 at *5 (N.D. Ill. Sept. 29, 2017); *HOPE, Inc. v. Eden Management, LLC*, 2016 WL 4011225 at *4 (N.D. Ill. July 27, 2016) Damages for diversion of resources to a fair housing organization compensate the organization for expenditures made "to identify and counteract the defendant's . . . discriminatory practices" and for "deflection of the

agency's time and money." *Havens*, 455 U.S. at 379; *Village of Bellwood v. Dwivedi*, 895 F.2d at 1526.     Frustration of mission is also a basis of organizational standing and a substantial component of damages that Plaintiff HOPE will obtain if it succeeds on its claims. *Id.; Common Cause Indiana v. Lawson*, 937 F.3d at 950-55 (7th Cir. 2018); *Fair Housing of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002).

Plaintiffs' Complaint asserts ample facts to establish HOPE'S standing based on diversion of resources and frustration of mission in that it details how Plaintiff Nawrocki was required to contact HOPE for support when Defendants ignored her reasonable accommodation request, and sets forth the various acts of advocacy on HOPE's part.  (Am. Cpl. (Am. Cpl. ¶¶22-23, 26-27, 29-30, 32-33)  Defendants themselves count six interactions with them by HOPE from the face of the Complaint, which is a substantial yet incomplete measure of the time and effort HOPE (frustratingly) expended as a result of Defendants' recalcitrant and unlawful conduct.  The Complaint also sufficiently alleges injury to HOPE under the Fair Housing Act, and properly seeks damages for HOPE for diversion of its resources and frustration of its mission.  (Am. Cpl. ¶37)  Nothing more is required of HOPE at the pleading stage.

D.  <u>Plaintiffs Sufficiently Allege Claims Against the Condominium Association</u>.

As Plaintiffs allege, the Condominium Association counsel did call Plaintiffs' counsel after service of summons to verbally inform Plaintiffs (without more) that a Homeowners Association also operates at the complex, uses the same manager and management company as the Condominium Association, and apparently is involved in parking lot management at the complex. (Am. Cpl. ¶¶13-17, 31)  Plaintiffs accordingly added the Homeowners Association as a Defendant on April 14, 2020.  (R.8)  Plaintiffs allege that Ms. Nawrocki is a member of the Condominium Association (Am. Cpl. ¶13), and that both Associations have a duty to her under the Fair Housing

11

Act reasonable accommodation provision. (Am. Cpl. ¶31) At this stage of the case, these allegations are sufficient to state a claim against both Associations and the manager.

While the Condominium Association hopes that its phone call asserting the Homeowners Association's involvement in parking at the complex should be the basis for dismissal, it is not. The Condominium Association, of which Plaintiff Nawrocki is a member, is a proper defendant in this case based on the facts alleged, and will remain a proper defendant even if additional facts are discovered that show it delegated or otherwise parsed out parking lot management to the Homeowners Association. Plaintiff has alleged she is a member of the Condominium Association. (Am. Cpl. ¶13) Plaintiffs have alleged that Ms. Nawrocki uses the parking lot adjacent to the Condominium unit door near the elevator she uses to access her condominium unit. (Am. Cpl. ¶¶18, 20) Plaintiffs have alleged that the manager Defendants are the sole managers for the complex, working for both Associations in joint fashion. (Am. Cpl. ¶¶14-17) Plaintiffs have alleged that both Association Defendants and the manager Defendants denied her accommodation request. (Am. Cpl. ¶¶34-35) There are no allegations about which of the two Associations in particular were acting to deny Plaintiff Nawrocki at this or that time, or which were communicating with her at particular times, because such technical distinctions were not made by Defendants in their communications with Ms. Nawrocki.

In any event, whatever facts appear in discovery will not eradicate the Condominium Association's obligations to its members under the Fair Housing Act to receive, participate in, further, follow up on, and properly resolve requests for reasonable accommodation, let alone stand by and allow an agent, third party or contracted party to discriminate in violation of the Fair Housing Act. In this case, the Associations interacted with Plaintiff Nawrocki and HOPE through a common manager, and through a common attorney. (Am. Cpl. ¶¶14-17, 20-33) These

communications were drawn out, inconsiderate to the point of mean-spirited, and cruel (e.g. ignoring, delaying and denying the request, followed by repeatedly claiming not to understand the request after it was repeatedly explained, belatedly asking for medical proof of disability as a means to delay and obfuscate, arguing to HOPE that Ms. Nawrocki's denied request would discriminate against others, telling Ms. Narwocki she must pay for her accommodation, etc.) In *Wetzel v. Glen St. Andrew Living Community, LLC*, 901 F.3d 856, 864 (7th Cir. 2018), the Seventh Circuit held that the FHA permits liability to be imposed on a defendant who has knowledge of third-party discrimination towards a resident but is deliberately indifferent to it. The Seventh Circuit expressly rejected the argument that an agency relationship is required. "[W]e have not gone that far: we have said only that the duty not to discriminate in housing conditions encompasses the duty not to permit known harassment on protected grounds." *Id.* "It makes no difference whether the person whose acts are complained of is an employee, an independent contractor, or for that matter a customer…," liability attaches if the defendant had available means to affect the conduct, but failed to do so. *Id.* at 865, *quoting Dunn v. Washington County Hosp.,* 429 F.3d 689, 691 (7th Cir. 2005). Here, the Condominium Association had such means and failed.

It is also a basic tenet of fair housing law that the terms of contractual arrangements between defendants cannot serve to limit, and have no bearing on, their liability to third persons. The general rule is that the duty to obey non-discrimination laws cannot be delegated to another. *Coates v. Bechtel*, 811 F.2d 1045, 1051 (7th Cir. 1987); *Walker v.* Crigler, 976 F.2d 900, 904 (4th Cir. 1992); *Saunders v. General Services Corporation,* 659 F.Supp. 1042, 1059 (E.D. Va. 1987)("Under the Fair Housing Act, a corporation and its officers are responsible for the acts of a subordinate employee...even though these acts were neither directed nor authorized....the statutory duty not to discriminate is non-delegable."); *Cato v. Jilek*, 779 F. Supp. 937, 946 n. 21 (N.D. Ill.

1991) (owner of property who defers to agent's discriminatory behavior is liable under the FHA). The FHA's prohibition against a party offloading its responsibilities under the Act is also reflected in cases holding that the owner or developer of a property cannot assert an indemnity claim against the project's architect for FHA design violations. *Equal Rights Center v. Niles Bolton Associates*, 602 F.3d 597, 602 (4th Cir. 2010); *United States v. Shanrie Co., Inc.*, 610 F. Supp.2d 958, 961 (S.D. Ill. 2009). These decisions reason compliance with the FHA is "non-delegable," and it would thwart the statutory purposes if a party could insulate himself from liability for discrimination by shifting the responsibility for preventing it to someone else. *Niles Bolton Assoc.*, 602 F.3d at 602. In the present case, as well, allowing the Condominium Association to shift all liability to a third party – either the common manager or the Homeowners Association - would be "antithetical" to the purposes of the Act and diminish incentives to ensure compliance. *Id.* Here, all defendants have a duty to the Plaintiff under the Fair Housing Act by virtue of her membership in the Condominium Association, by virtue of the entwined involvement of the Homeowners Association in overseeing parking at the overall complex, and by virtue of the manager Defendants' acting jointly on behalf of both Associations.

An analogous hypothetical example may bring home the point: Could the Condominium Association lawfully stand by and allow its own manager, either on behalf of the Homeowners Association alone or also on behalf of the Condominium Association, to refuse to allow Black Association members to park in this or that parking lot? Obviously, that would be a Fair Housing Act violation by all involved parties. The Condominium Association's role in denying a reasonable accommodation request to Ms. Nawrocki (and failing to properly engage in the interactive process as well as failing to demonstrate any rational, reason or defense) similarly runs afoul of the Fair Housing Act.

14

## <u>Conclusion</u>

Based on the foregoing, Defendants' Motions to Dismiss should be denied in their

entirety.

Respectfully Submitted,

_____*/s/ Jennifer K. Soule*_____

Jennifer K. Soule
Kelly K. Lambert
*Soule, Bradtke & Lambert*
402 Campbell Street, Suite 100
Geneva, IL 60134
*Attorneys for Plaintiffs*

Dated: June 25, 2020