IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Janet Nawrocki and H.O.P.E., INC., d/b/a HOPE Fair Housing Center, ) ) ) Plaintiffs, ) ) v. ) ) Oak Brook Towers Condominium Association., et al., ) ) ) Defendants. ) | Case No.: 20-cv-1517 Honorable Joan B. Gottschall |

**MEMORANDUM OPINION AND ORDER**

This suit under the federal Fair Housing Act of 1968, as amended ("FHA" or "Fair Housing Act"), 42 U.S.C. § 3601 *et seq.*, grew out of plaintiff Janet Nawrocki's May 29, 2019, request for an assigned parking space near her unit as a reasonable accommodation of her disability, which makes it difficult and dangerous for her to walk long distances. *See* Am. Compl. ¶¶ 1, 10, ECF No. 8. The court has before it two motions to dismiss the amended complaint for failure to state a claim. ECF Nos. 19, 21. For the following reasons, the court denies both motions.

**I. Summary of the Amended Complaint**

Plaintiff Janet Nawrocki ("Nawrocki") owns and lives in a condominium unit located in a development called "Oak Brook Towers" (also sometimes "the property"). Am. Compl. ¶¶ 1, 18. She names five defendants. *Id.* ¶¶ 13–17. First, she sues two separate entities: (1) the condominium association organized for Oak Brook Towers ("condominium association") and (2) the Oak Brook Towers Homeowners Association ("homeowners association"). *Id.* ¶¶ 13–14. As discussed below, the relationship between these two entities and their responsibilities, if any,

1

under the FHA are disputed. Nawrocki also names the Oak Brook Towers property manager, Richard Krilich ("Krilich"), and two companies allegedly hired to manage the property.[1] *See id.* ¶¶ 15–17.

Nawrocki "is substantially limited in her ability to engage in several major life activities, including standing and walking." *Id.* ¶ 9. Her disability puts her at risk of pain, falling, and being incapacitated if she walks "too far." *Id.* ¶ 10. She has obtained a handicap parking placard due to her disability. *Id.*

An elevator serves Nawrocki's condominium unit. *Id.* ¶ 18. It is near the tenant entrance in the building's "back parking lot." *Id.*

On May 29, 2019, Nawrocki requested as a reasonable accommodation that "one of the parking spaces in the row closest to the back entrance be assigned to her." *Id.* ¶ 20. Defendants allegedly did not respond to her request, and Nawrocki contacted co-plaintiff HOPE Fair Housing Center, Inc. ("HOPE"), a non-profit, for assistance. *Id.* ¶¶ 11, 21-22. HOPE's mission includes "advocating for the rights of people with disabilities to accessible housing." *Id.* ¶ 12. On July 30, 2019, HOPE sent a letter to request "a designated parking space" as a reasonable accommodation. *Id.* ¶ 22.

Approximately six months of correspondence and communications between HOPE on one hand and defendants and their counsel on the other followed. *See id.* ¶¶ 23–30, 32–33. In a letter received by HOPE on August 19, 2019, Krilich advised that five parking spots were available to disabled individuals on a first-come, first-serve basis. *Id.* ¶¶ 23-24. However, plaintiffs allege that those parking spaces do not comply with the Fair Housing Act and are dangerous and unsuitable for people with disabilities. *See id.* ¶¶ 24–25. Furthermore, two of the

---

[1] Defendant FirstService Residential Illinois 2, Inc., allegedly acquired defendant Lieberman Management Services during the course of the events that gave rise to this suit. Am. Compl. ¶ 16.

parking spaces are located "at a far distance" from the rear entrance to Nawrocki's building, and "usable or accessible routes [from the other three parking spots] to [that] tenant door" are lacking. *Id.* ¶ 24. Defendants' counsel has also allegedly suggested that Nawrocki purchase a parking space in an indoor parking area. *See id.* ¶ 30.

## II. HOPE's Standing

The parties argue both motions to dismiss under the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim on the merits. But defendants' challenge to HOPE's standing to sue raises a threshold challenge to this court's subject matter jurisdiction that must be analyzed under Rule 12(b)(1). *See Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 277–78 (7th Cir. 2020); *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017). A Rule 12(b)(1) motion raises either a facial or factual challenge to subject matter jurisdiction. *Silha v. ACT, Inc.,* 807 F.3d 169, 173 (7th Cir. 2015) (citing *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009)). Defendants raise a facial challenge here "because they contend that Plaintiffs' complaint lacks sufficient factual allegations to establish standing." *Id.*

A plaintiff must demonstrate Article III standing by showing that it "has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct and is likely to be redressed by a favorable judicial decision." *Carney v. Adams*, 141 S. Ct. 493, 498 (2020) (citations omitted). Defendants maintain that, unlike Nawrocki, HOPE does not adequately show that it suffered a concrete and particularized injury. To resolve this issue, the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Silha*, 807 F.3d at 173 (quoting *Warth v. Seldin*, 422 U.S. 490, 501

3

(1975)) (other citation omitted).  The complaint "need only 'plausibly suggest' each element of standing."  *Bazile*, 983 F.3d at 278 (citing *Silha*, 807 F.3d at 173–74).

      HOPE relies on *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).  In *Havens Realty*, the Supreme Court made "clear . . . that the only injury which need be shown to confer standing on a fair-housing agency is deflection of the agency's time and money from counseling to legal efforts directed against discrimination."  *Vill. of Bellwood v. Dwivedi*, 895 F.2d 1521, 1526 (7th Cir. 1990).  *Havens Realty* remains binding precedent despite subsequent cases on Article III standing.  *Common Cause Ind. v. Lawson*, 937 F.3d 944, 950–51 (7th Cir. 2019) (citing *Bank of Am. Corp. v. City of Mia.*, 137 S. Ct. 1296, 1303 (2017)); *see also Access Living of Metro. Chi. v. Uber Techs., Inc.*, 958 F.3d 604, 608-609 (7th Cir. 2020).  The Supreme Court reasoned in *Havens Realty*: "If, as broadly alleged [in the complaint], [defendant's] [racial] steering practices have perceptibly impaired [the plaintiff organization's] ability to provide counseling and referral services for low-and moderate-income homeseekers, there can be no question that the organization has suffered injury in fact."  *Havens Realty*, 455 U.S. at 379, *quoted in Lawson*, 937 F.3d at 950; *see also Dwivedi*, 895 F.2d at 1526.

      By way of illustration, in *Access Living*, the Seventh Circuit held that a disability advocacy organization adequately alleged the elements of standing in its complaint against the ride sharing company Uber.  The organization alleged that Uber provided unequal access to its disabled members and volunteers.  *Access Living*, 958 F.3d at 608-609.  The complaint alleged that "unequal access" provided by Uber had "prevented [the organizational plaintiff's] volunteers and staff from attending meetings with lawmakers and local transportation boards because getting there would have been too costly."  *Id.* at 609.  The increased costs "force the

4

organization to divert resources to counter this discrimination that it could otherwise use to fulfill its disability rights mission." *Id.*

Like the plaintiff in *Havens Realty*, HOPE pleads broadly that its "limited resources have been diverted from providing . . . services to efforts directed to investigate, address, and counteract Defendants' discriminatory and retaliatory conduct." Am. Compl. ¶ 37(B). This broad allegation suffices by itself to plead an injury in fact under the rule that "[a]t the pleading stage, 'general factual allegations of injury resulting from the defendant's conduct may suffice' . . . because '[courts] "presum[e] that general allegations embrace those specific facts that are necessary to support the claim."'" *Bazile*, 983 F.3d at 278 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)) (internal citation omitted).

Additionally, the amended complaint here contains specific allegations lending factual plausibility to HOPE's claimed injury in fact. HOPE points to allegations of its correspondence and phone calls to defendants in July through December 2019 in an effort to resolve Nawrocki's request for a reasonable accommodation. *See* Am. Compl. ¶¶ 22–30, 32-33. Without citing any legal authority, defendants argue that a fair housing organization's sending of correspondence is insufficient to establish injury in fact because it causes too small a diversion of the organization's resources from providing "counseling services." *E.g.,* Defs.' Mot. to Dismiss 4-5, ECF No. 21.

Defendants' unsupported legal argument runs contrary to the reasoning of *Dwivedi* that "although [a fair housing organization's effort to provide] counseling is not impaired directly there would be more of it were it not for the defendant's discrimination." 895 F.2d at 1526; *see also Havens Realty*, 435 U.S. at 539. Thus, like the complaint in *Access Living*, HOPE's amended complaint grounds its broad allegations of concrete and particularized injury in fact "not in a generalized appeal to its mission, but in specific contentions about incurring increased

5

costs as a result of" defendants' alleged Fair Housing act violations.[2]  958 F.3d at 609; *see also H.O.P.E., Inc. v. Alden Gardens of Bloomingdale, Inc.*, 2017 WL 4339823, at *5 (N.D. Ill. Sept. 29, 2017).  The court therefore denies defendants' motion to dismiss HOPE for want of standing.

### III. Failure to State a Claim

To survive a Rule 12(b)(6) motion to dismiss, the complaint must "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim satisfies this standard when its factual allegations "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together.").  For purposes of a motion to dismiss, the court takes all facts alleged by the plaintiff as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth.  *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).  Defendants advance three Rule 12(b)(6) arguments.

First, the condominium association submits that it is not a proper party because "the Condominium Association's control is specifically limited by the Home Owner's Association's

---

[2] Defendants also ignore the non-counseling services HOPE says it provides.  According to the amended complaint, HOPE's programs and services include "advocating for the rights of people with disabilities to accessible housing, educating the public about fair housing rights and requirements, educating and working with industry groups on fair housing compliance, providing assistance to individuals and families looking for housing or affected by discriminatory housing practices, and eliminating discriminatory housing practices."  Am. Compl. ¶ 37(A).  The amended complaint lists seven specific incidents in which HOPE communicated with defendants by letter, email, or by phone in an effort to resolve Nawrocki's request for a reasonable accommodation.  *See* Am. Compl. ¶¶ 22-30, 32-33.  HOPE's Director of Enforcement, who is not a lawyer, participated in many of these communications and conversations with defendants' representatives.  *See id.*  With inferences favorable to HOPE, these communications, which included several phone conversations, imposed an opportunity cost on HOPE by syphoning the Director's time from HOPE's education and advocacy efforts.

governing documents regarding the parking areas in which an accommodation is requested." Condo Ass'n's Mot. to Dismiss 4, ECF No. 19. The amended complaint alleges that one of defendant's lawyers made an oral representation to this effect after this case was filed, but the claim has yet to be substantiated. *See* Am. Compl. ¶ 31. This argument is premised on the contents of alleged governing documents, yet the condominium association has not provided copies. *See id.* Regardless, the court would commit error if it were to consider Oakbrook Towers's governing documents on a Rule 12(b)(6) motion because the court would be looking to facts external to the amended complaint without converting the motion to dismiss to a motion for summary judgment. *Travel All Over the World v. The Kingdom of Saudi Arabia*, 73 F.3d 1423, 1430 (7th Cir. 1996); *see also Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (discussing the rule that facts extrinsic to the complaint generally cannot be considered on a Rule 12(b)(6) motion); Fed. R. Civ. P. 12(d). The court, in its discretion, declines to convert the condominium association's motion.[3]

Defendants next contend that the amended complaint does not clearly "identify which specific provision(s) of the FHA [plaintiffs] believe" the defendants violated. ECF No. 19 at 3; ECF No. 21 at 2. Defendants acknowledge that paragraph 35 of the amended complaint cites 42 U.S.C. § 3604(f)(3)(B), a provision of the FHA, but they argue that this subdivision merely "provide[s] a definition for subsection (f)." ECF No. 21 at 4.

Defendants proceed from a flawed understanding of the pleading standard. *See* Fed. R. Civ. P. 8(a)(2). It is settled that "the complaint need not identify a legal theory, and specifying an incorrect theory is not fatal." *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th

---

[3] On a Rule 12(b)(6) motion, the court "may consider 'documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice'" in addition to the complaint. *O'Brien v. Vill. of Lincolnshire*, 955 F.3d 616, 621 (7th Cir. 2020) (citation omitted). None of these exceptions applies here.

7

Cir. 1992); *see also BRC Rubber & Plastics, Inc. v. Cont'l Carbon Co.*, 900 F.3d 529, 541 (7th Cir. 2018). Thus, even if plaintiffs had cited the wrong statute (they did not, as explained below), the incorrect citation would not necessarily be fatal to the amended complaint.

Furthermore, defendants' unsupported legal argument that § 3604(f)(3)(B) contains an unenforceable definition borders on the frivolous. Defendants cite no legal authority in support of this position. *See, e.g.,* ECF No. 21 at 3–4. As argued in their response, defendants take the definition badly out of context. Section 3604 begins with a paragraph declaring that the practices listed in the following subsections "shall be unlawful." 42 U.S.C. § 3604. Among those practices, subsection (f)(1) forbids anyone covered by the FHA "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of [among other things,] that buyer or renter." § 3604(f)(1). By its terms, the statutory definition defines prohibited "discrimination" to include "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." § 3604(f)(3)(B).

If § 3604's language leaves any doubt about whether it is privately enforceable (it does not), the Seventh Circuit has stated that "[t]he basic elements of an FHA accommodation claim are well-settled."[4] *Valencia v. City of Springfield*, 883 F.3d 959, 967 (7th Cir. 2018) (citing *Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 749 (7th Cir. 2006)); *see also id.* (citing and discussing reasonable accommodations under § 3604(f)(3)(B)). Thus, the amended complaint's citation to § 3604(f)(3)(B) gives defendants fair notice of the grounds upon which plaintiffs' claim rests. Fed. R. Civ. P. 8(a)(2). What is more, the entire thrust of the well-pleaded allegations of plaintiffs' amended complaint is that Nawrocki made a request for the use

---

[4] In their response brief, plaintiffs collect numerous cases adjudicating failure to accommodate claims under § 3604(f)(3). ECF No. 23 at 8–9.

8

of a parking space as a reasonable accommodation. *See, e.g.,* Am. Compl. ¶¶ 1, 18–35. Those allegations by themselves give defendants the fair notice required by federal pleading standards.

Defendants' final set of arguments confirm that they understand the nature of plaintiffs' claims and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2). For the first time in their reply, defendants raise several arguments including an argument that Nawrocki's request for an assigned parking space in the lot behind her building is unreasonable and overly burdensome. *See* ECF No. 26 at 3-6. The court cannot address these arguments because "arguments raised for the first time in a reply brief are waived." *E.g., Wonsey v. City of Chi.*, 940 F.3d 394, 398–99 (7th Cir. 2019) (citing *United States v. Alhalabi*, 443 F.3d 605, 611 (7th Cir. 2006)). Additionally, the arguments raised in defendants' reply depend on facts extrinsic to the amended complaint such as the alleged burdens defendants will experience if Nawrocki's request for a parking space were granted. *See* ECF No. 26 at 3-6 (asserting without evidence that documents governing the condominium association will need to be amended and asserting that there will be additional "fallout"). Resolving these issues on a motion to dismiss would be inappropriate since "[w]hether a requested accommodation is reasonable or not is a highly fact-specific inquiry and requires balancing the needs of the parties." *Valencia*, 883 F.3d at 968 (citing *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002)).

### IV. Conclusion

Because HOPE has adequately alleged an injury in fact and because the amended complaint states a claim for which relief can be granted, defendants' motions to dismiss the amended complaint are denied.

Dated: February 23, 2021 /s/
Joan B. Gottschall
United States District Judge

9